UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:25-CR-45-CCB-SJF

TERRENCE BAKER

## OPINION AND ORDER

Based on his plea, Defendant Terrence Baker has been found guilty of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (ECF 1, 24). In preparation for sentencing, a Presentence Investigation Report ("PSR") was completed. (ECF 37). Mr. Baker filed three objections to the PSR. (ECF 38, 44). To ensure that the Court had all the information needed to calculate Mr. Baker's Guideline range properly before reaching a reasonable sentence, his sentencing was bifurcated into two separate hearings. (ECF 33). The Court received evidence and heard argument on the objections from the parties at an evidentiary hearing on April 28, 2026, and now resolves the objections in preparation for the final sentencing hearing on April 30, 2026. (ECF 46).

### I. OFFENSE CONDUCT

Mr. Baker's conviction arose from events in South Bend, Indiana beginning on April 8, 2025. On that date, South Bend police officers responded to a report of shots fired at about 2:20 p.m. on North Wilber Street in a residential neighborhood. At the scene, officers observed multiple bullet holes in the south and west sides of a blue, two-story house and collected spent shell casings. They also spoke to an occupant of the

house, A.W., who shared text messages he said were sent to him earlier that day by Mr. Baker. The messages threatened A.W. for $500 Mr. Baker said was owed to him. An arrest warrant was issued for Mr. Baker based on state charges of felony criminal recklessness filed the day of the shooting alleging that he shot approximately 8 rounds at the blue Wilber Street residence.

On April 15, 2025, the manager at the Enterprise car rental location in Niles, Michigan contacted the Niles Police Department. The manager stated that Mr. Baker had rented a 2024 white Hyundai Elantra on March 25, 2025. The vehicle had been scheduled for return on March 26, 2025, but was not returned. Surveillance video at a gas station just south of the Wilber Street residence captured video of a white Hyundai sedan with the same Illinois license plate as the rented car on the afternoon of April 8, 2025.

On April 23, 2025, law enforcement located Mr. Baker loading luggage into the rear of an Uber vehicle in front of the LaQuinta hotel off Lincolnway West in South Bend. Officers arrested Mr. Baker and asked if he had any weapons on him. Mr. Baker stated that he had a weapon on his chest. Law enforcement located a sling style fanny pack across Mr. Baker's chest. When they unzipped the fanny pack, they found a Bersa Model 83, .380 caliber pistol with serial number 297968. Mr. Baker admitted that he was a felon and told police that his daughter owned the firearm. A firearms examiner confirmed that the Bersa .380 caliber gun found on Mr. Baker had been used to fire multiple shots at the Wilber Street house on April 8, 2025.

2

On April 24, 2025, Mr. Baker made a phone call to his daughter from the St. Joseph County Jail. During that call, Mr. Baker told his daughter to log into his iCloud account, put his phone in lost mode, and "erase everything in that mother fucker." (Gov. Exh. 9). In that conversation, Mr. Baker mentioned his text messages on the phone and told his daughter that "they" — the police — were trying to get a search warrant on his phone. His daughter told him that the phone was located at 701 W. Sample nine hours before. Together, they determined that the address was the location of the South Bend police station.

## II.    MR. BAKER'S OBJECTIONS TO THE PSR

### A.    Obstruction-of-Justice Enhancement (PSR Paragraphs 13, 14, 18, 19, 25, 26, 29, 132, and 146)

The Government bears the burden to prove by a preponderance of the evidence that any sentencing enhancement is warranted. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006). Sentencing Guideline § 3C1.1 provides for a 2-level increase in a defendant's offense level for obstructing or impeding the administration of justice if

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

The Guideline calculation of Mr. Baker's offense level in the PSR included the obstruction enhancement based on Mr. Baker's jail call to his daughter on April 24, 2025, directing her to report his cell phone as lost and erase everything on it. At the evidentiary hearing, the Government submitted a recording of the jail call to show that

3

Mr. Baker attempted to destroy or conceal evidence by directing his daughter to use his iCloud account to report his cell phone as lost and to "erase everything in that mother fucker." (Gov. Exh. 9). The Government emphasized that Mr. Baker also referenced his text messages in that call and told his daughter that the police were seeking a search warrant for his phone. Mr. Baker objects to the application of the enhancement arguing that there is no evidence of "significant and actual obstruction" to the Government's official investigation.

The Application Notes to Guideline § 3C1.1 provide a non-exhaustive list of types of conduct to which the obstruction-of-justice enhancement applies. One example, found in Application Note 4(D), suggests application of the enhancement for

> Destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . ., or attempting to do so . . . .

Note 4(D) also identifies an exception as follows:

>  . . . . if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender . . . ."

Mr. Baker argues that the enhancement only applies if the Government shows that Mr. Baker's actions actually obstructed or impeded the official investigation.

In support, Mr. Baker cites to *United States v. Griffin*, 310 F.3d 1017, 1023 (7th Cir. 2002) and *United States v. Selvie*, 684 F.3d 679, 684 (7th Cir. 2012). The court in *Griffin* interpreted the Guidelines as requiring a "causal relationship" between the alleged

4

obstructive conduct and "a resulting impediment upon the instant investigation or prosecution" for the enhancement to apply. *Griffin*, 310 F.3d at 1023. *Griffin* involved a defendant's materially false statement to law enforcement, an example of obstruction described in Application Note 4(G) as

> Providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.

Similarly, the court in *United States v. Selvie* affirmed application of the obstruction enhancement to a defendant who recruited an intermediary to relay a materially false statement to the police. 684 F.3d at 683. In reaching its conclusion, the court considered whether the false information provided on behalf of the defendant "significantly obstructed or impeded the official investigation or prosecution of the instant offense" citing Application Note 4(G). *Id.* The court's holdings in both *Griffin* and *Selvie* are consistent with the plain language of Application Note 4(G).

However, Mr. Baker did not make a materially false statement to police or direct his daughter to do so. He directed his daughter to destroy or conceal evidence—namely his phone, a phone he knew was going to be subject to a search warrant and contained text messages relevant to the separate investigation of the Wilber Street shooting on April 8, 2025. This conduct falls under the example in Application Note 4(D), the plain language of which does not require "significant obstruction or impediment." Therefore, Application Note 4(G), and cases like *Griffin* and *Selvie* interpreting it, do not control the determination of whether the obstruction enhancement applies to Mr. Baker.

When assessing the applicability of a particular Sentencing Guideline, the court starts by applying the Guideline's plain meaning. *See United States v. Carnell*, 972 F.3d 932, 939 (7th Cir. 2020). Here, that is Guideline § 3C1.1, the plain language of which provides for application of the obstruction enhancement for an attempt to obstruct or impede the administration of justice but with no requirement of actual obstruction or impediment let alone the "significant" obstruction or impediment favored by Mr. Baker.

The Court similarly considers the plain language of application notes attached to the Guidelines. Any application note is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the] guideline." *Stinson v. United States*, 508 U.S. 36, 37-38 (1993). Application notes may serve assorted purposes including interpretation of a Guideline or explanation of how the Guideline should be applied. U.S.S.G. § 1B1.7; *see also Stinson*, 508 U.S. at 41. Yet the application notes have no independent force standing alone. *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016).

On the facts alleged by the Government, Application Note 4(D) to Guideline § 3C1.1 is on point. While Note 4(D) does not explicitly require "significant obstruction or impediment," it does provide that the enhancement should not apply if the alleged obstructive conduct occurred "contemporaneously with arrest" and did not result in a "material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." The "material hindrance" language in Note 4(D) "exists in the interpretive note to distinguish what is often *reflexive* at the time of arrest from what is *reflective* well after arrest." *United States v. Jackson*, 569 F. Supp. 3d 760, 762 (N.D.

Ind. 2021) (emphasis in original). Thus, the first key question here is whether Mr. Baker made the phone call to his daughter contemporaneous to his arrest. He did not call his daughter until the day after his arrest showing that he had time to reflect on his situation before directing his daughter to attempt to destroy or conceal evidence from his phone. Therefore, his attempted obstruction was not contemporaneous to his arrest. *Cf. id.* (citing *United States v. Waldon*, 206 F.3d 597, 608-09 (6th Cir. 2000) (call from jail six hours after arrest was not contemporaneous to arrest under note 4(D)); *United States v. Hankins*, 127 F.3d 932, 936 (10th Cir. 1997) ("whether [his] non-contemporaneous attempt materially hindered the investigation is irrelevant")).

As such, the exception under Note 4(D) does not apply regardless of whether Mr. Baker's alleged obstructive conduct materially hindered the investigation. And the obstruction enhancement is warranted under the plain language of both Guideline § 3C1.1 and the related Application Note 4(D) when a "defendant attempted to engage in obstructive conduct, regardless of whether that attempt was ultimately successful." *United States v. Barker*, 80 F.4th 827, 835 (7th Cir. 2023). Mr. Baker's directive to his daughter to erase everything on his phone combined with his explicit reference to the text messages on that phone and his statement to her about the expected search warrant support the inference that Mr. Baker was willfully attempting to destroy or conceal evidence related to the instant felon-in-possession offense, relevant conduct, or a closely related offense, such as the April 8th shooting where the same firearm was used. This remains true even though the contents of Mr. Baker's phone were never erased, and police were able to search his phone and retrieve information from it pursuant to a

search warrant. Therefore, the Government has proven by a preponderance of the evidence that the obstruction enhancement under Guideline § 3C1.1 is warranted.

Additionally, Mr. Baker objects to the finding that he falsely denied relevant conduct and qualified for the obstruction enhancement precluding application of the acceptance of responsibility adjustment under Guideline § 3E1.1. Guideline § 3E1.1 provides for a 2–3 level reduction in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." Yet the acceptance of responsibility reduction does not ordinarily apply when a defendant's conduct results in application of the obstruction enhancement under Guideline § 3C1.1. U.S.S.G. § 3E1.1, App. Note 4. Nevertheless, Application Note 4 contemplates the possibility that "[t]here may . . . be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."

When asked at the evidentiary hearing whether there are any extraordinary circumstances that would warrant the acceptance-of-responsibility reduction even if the Court were to find that the obstruction enhancement applies, defense counsel acknowledged there was none. Therefore, with the application of the obstruction enhancement and no evidence of extraordinary circumstances, Mr. Baker has failed to show by a preponderance of the evidence that the acceptance-of-responsibility reduction applies to his Guidelines calculation.

8

B. **Another Felony Offense Enhancement (PSR Paragraphs 4, 5, 22, 26, 29, 132, and 146)**

Guideline § 2K2.1(b)(7)(B) directs the Court to increase a defendant's offense level by four levels if he used or possessed any firearm in connection with another felony offense. Application Note 13(C) to Guideline § 2K2.1 defines "[a]nother felony offense" as

> any federal, state or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

Application Note 13(A) explains that the Subsection § 2K2.1(b)(7)(B) "another felony offense" enhancement applies "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense . . . ." But in determining whether the enhancement applies, "the court must consider the relationship between the instant [possession] offense and the other [alleged] offense, consistent with relevant conduct principles" outlined in Guideline § 1B1.3(a)(1)–(4). U.S.S.G. § 2K2.1(b)(7)(B), App. Note (D).

The Government alleges that the "another felony offense" enhancement applies to Mr. Baker based on his conduct on April 8, 2025, when he allegedly possessed and used the same firearm at issue in the instant possession offense during the Wilber Street shooting into an occupied home. After the shooting, charges were filed in Indiana state court against Mr. Baker for felony criminal recklessness—shooting a firearm into a building under Case Number 71D02-2504-F5-000102. Even though that charge was later dismissed, the Government maintains that a preponderance of evidence shows that Mr.

9

Baker committed Level 5 felony criminal recklessness and the lesser included Level 6 felony offense under Indiana Code § 35-42-2-2(b)(1) and (2)(A). Under the version of Indiana criminal recklessness statute effective at the time of the April 8th shooting, a person is guilty of criminal recklessness if he "recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury." Ind. Code § 35-42-2-2(a)[1]. Typically a misdemeanor, criminal recklessness becomes a Level 6 felony "if it is committed while armed with a deadly weapon . . . ." or the more serious Level 5 felony if "it is committed by shooting a firearm into an inhabited dwelling or other building or place where people are likely to gather . . . ." *Id.* § 35-42-2-2(b)(1)–(2).

Mr. Baker objects to application of the "another felony offense" enhancement arguing that the Government cannot prove by a preponderance of the evidence that he was the individual who allegedly committed the April 8th shooting. Alternatively, Mr. Baker argues that any criminal recklessness he may have committed does not constitute relevant conduct as required to support application of the Subsection (b)(7)(B) "another felony offense" enhancement. The April 8th shooting would constitute relevant conduct if it were "part of the same course of conduct or common scheme or plan" as Mr. Baker's unlawful possession of the firearm on April 23, 2025. *See* U.S.S.G. §1B1.3(a)(2); U.S.S.G. § 2K2.1, app. note 13(D)(i); *see also United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016).

---

[1] Ind. Code § 35-42-2-2, effective July 1, 2019, to June 30, 2025.

Despite Mr. Baker's objections, the preponderance of the evidence in the record shows that Mr. Baker was the shooter at the Wilber Street residence on April 8, 2025. While there is no eyewitness testimony identifying Mr. Baker as the shooter, there is considerable circumstantial evidence linking him to the crime as outlined below.

At the evidentiary hearing, the police detective who investigated the shooting testified that the shots-fired alert occurred at about 2:20 p.m. that day. He also provided police phone tracking evidence showing that Mr. Baker's cell phone was in the area of the Wilber Street shooting at that time. (Gov. Exh. 8). He also testified that ballistics testing concluded that the shell casings found at the scene came from the same gun found on Mr. Baker when he was arrested for the instant offense on April 23, 2025.

Video evidence from a doorbell camera at the white house immediately south of the blue Wilber Street house (Gov. Exh. 2, 2a) and from a surveillance camera outside the gas station south of both homes (Gov. Exh. 4, 4a, 4b) also correlate with the timing of the shooting. The doorbell camera footage, time-stamped on April 8, 2025, at about 2:21 p.m., shows an individual walking on the sidewalk from the south toward both homes, stopping in front of the white house, taking 8 shots at the blue house and running back down the sidewalk to the south. In the video, the shooter was wearing dark pants and a hoodie with a white shirt underneath and white shoes.

The gas station surveillance video footage, time-stamped between about 2:10 p.m. and 2:29 p.m. on April 8, 2025, shows a 2024 white Hyundai pulling up to the easternmost gas pump at approximately 2:10 p.m. After about three minutes, the driver got out of the car wearing a white shirt and dark pants. He went to the trunk, opened it,

11

put on a dark hoodie, and walked north toward the east side of the building. While walking, he zipped the hoodie and pulled up the hood. At about 2:19 p.m., he walked out of view along the east side of the building. At about 2:21 p.m., the driver jogs back into view from the east side of the building before slowing to a walk and returning to the white Hyundai. He got into the car and immediately drove away from the gas station at about 2:22 p.m.

Later, investigators learned of a report to the Niles Police Department on April 15, 2025, about a rental car that had not been returned to the Enterprise rental car company. (Gov. Exh. 6). The rental car agreement shows that Terrence Baker, with the same phone number as the phone found on Mr. Baker when he was arrested on April 23, 2025, rented a 2024 white Hyundai on March 25, 2025, with an anticipated return date of March 26, 2025. The rental car agreement also listed the same license plate number for the rented car as the car seen on the gas station video on April 8, 2025. (Gov. Exh. 5).

Additionally, text messages taken from the phone owned by Mr. Baker include a long thread of threatening messages to A.W. from about 12:16 p.m. to 2:51 p.m. on April 8, 2025. (Gov. Exh. 7). Mr. Baker's messages include threats of violence if A.W. did not pay him the $500 he said was due to him. Among other things, Mr. Baker said, "Its going to be a bad night if" he did not get his $500. He also said, "I hope no kid get hit" and "I am Active shooter." The threatening messages were almost continuous until about 2:12 p.m. The next message appears at 2:26 p.m. and says, "You scared yet bitch." The text message thread presented to the Court ends at 2:51 p.m. with "I will pop you

12

for both" referencing an allusion to a robbery and gun incident in the preceding messages. At the hearing, the investigating detective testified that assorted personal information, related to among other things credit cards and addresses, was retrieved connecting the phone to Mr. Baker without any evidence that the phone was used by anyone besides him.

Taken together, the evidence of record establishes a timeline of events before and after the Wilber Street shooting at about 2:20 p.m. on April 8, 2025, and links Mr. Baker and his phone to those events. The preponderance of this evidence establishes that Mr. Baker was the shooter on April 8, 2025. And by shooting into an inhabited building in a residential area on a spring afternoon, Mr. Baker recklessly, knowingly, or intentionally performed an action that created a substantial risk of bodily injury to the occupants of the house, bystanders, and even children who could have been out in the neighborhood. In other words, the preponderance of the evidence shows that Mr. Baker committed felony criminal recklessness under Ind. Code § 35-42-2-2.

Moreover, the firearm used in the April 8th shooting was also possessed unlawfully by Mr. Baker when he was arrested on April 23, 2025. Ordinarily, when a court determines that a defendant unlawfully possessed a firearm that he used in connection with an earlier crime, the earlier crime is deemed relevant conduct under Guideline § 1B1.3. *See* U.S.S.G. § 2K2.1, app. note 13(D)(i). Thus, Mr. Baker's possession of the same firearm during both the April 8th shooting and his unlawful possession conduct on April 23, 2025, were part of the same course of conduct or common scheme or plan. *See also* U.S.S.G. § 1B1.3(a)(2), app. note 5(B). Mr. Baker has also been found to

13

have used the firearm at issue in the instant offense in connection with the felony offense of criminal recklessness during the April 8th shooting, which also makes it relevant conduct under Guideline § 1B1.3(a)(4). Therefore, the April 8th shooting is relevant conduct to support application of the "another felony offense" enhancement in Guideline § 2K2.1(b)(7)(B).

### C. Criminal History Points for 2006 Cocaine Conviction (PSR Paragraphs 38, 59, 50, and 132)

Under Guideline § 4A1.1(a), three points are added to a defendant's criminal history score " for each prior sentence of imprisonment exceeding one year and one month." Application Note 1 to Guideline § 4A1.1 clarifies that "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." *See also* U.S.S.G. § 4A1.2(e)(1). Fifteen years before the commencement of Mr. Baker's instant offense on April 23, 2025, would be April 23, 2010.

In the PSR, Mr. Baker was assessed three criminal history points for his felony conviction on September 8, 2006, for possession of cocaine in Indiana Case Number 71D01-0205-FA-00031. For that conviction, he was sentenced to 3 years in the Indiana Department of Correction ("IDOC"). At the same time, he was serving a 6-year sentence for an April 2006 conviction for felony robbery. A notice to the state court on August 1, 2007, states that Mr. Baker was "eligible" for the St. Joseph County Community Corrections ("SJCCC") Community Transition Program ("CTP") to complete his cocaine-related sentence. (ECF 44-4). On the recommendation of the SJCCC, the state

14

court denied Mr. Baker placement in the CTP because there was not an established placement for him in St. Joseph County and because he was still serving his robbery sentence. (ECF 44-5).

According to certified IDOC records, Mr. Baker was then released to parole on both convictions in September 2007 and promptly absconded. (Gov. Ex. 10). He was eventually caught in 2011 and returned to prison to complete both of his sentences. IDOC records also show that he was discharged from IDOC on August 16, 2012, for the cocaine conviction after reaching his max-out date. He served additional time in prison, and then on parole, before completing the sentence for his robbery conviction in 2015.

Mr. Baker objects to the imposition of three criminal history points for his cocaine conviction arguing that he was eligible for the CTP in September 2007 citing the SJCCC notice to the state court. As such, Mr. Baker contends that given his credit time and good time credit, he would have completed his cocaine confinement long before the 15-year window that began in April 2010. Mr. Baker's argument is misplaced. The Government has shown by a preponderance of the evidence through the certified IDOC Records that his cocaine-related sentence was not completed before April 2010 because he absconded from parole in 2007 and returned to prison in 2011 to complete his cocaine-related sentence before being discharged from that sentence in August 2012. Therefore, Mr. Baker's incarceration was completed less than fifteen years before he committed the instant offense on April 23, 2025, and three criminal history points are warranted under Guideline § 4A1.1.

15

**III.    CONCLUSION**

For the reasons discussed above, Defendant Terrence Baker's objections to

Paragraphs 4, 5, 13, 14, 18, 19, 22, 25, 26, 29, 38, 49, 50, 132, and 146 of the

Presentence Investigation Report (ECF 37) are **OVERRULED**.

SO ORDERED on April 29, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT